UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSHUA KRICK,

                     Plaintiff,

          v.

TOWN OF LYONS, NEW YORK, *et al.*,

                     Defendants.

_____

**DECISION AND ORDER**

6:24-CV-06178 EAW

## INTRODUCTION

This action involves two sets of claims by plaintiff Joshua Krick ("Plaintiff"). First, Plaintiff has sued the Town of Lyons, New York (the "Town"), its Code Enforcement Officer Michael Bouwens ("CEO Bouwens"), and its Building Safety Inspector Marc Lewis (collectively the "Town Defendants") under 42 U.S.C. § 1983 for allegedly violating his constitutional rights to due process and to be free from unlawful searches and seizures in connection with the emergency condemnation of a home in which he was a tenant. (*See* Dkt. 1 at ¶ 119-32). Second, Plaintiff has asserted state law claims for breach of the warranty of habitability, negligence, and abuse of process against the owner of the property, Wayne Cummings ("Mr. Cummings"), an LLC owned by Mr. Cummings, WEM Property LLC ("WEM Property"), and property managers Donna Stivers ("Mrs. Stivers") and Bob Stivers ("Mr. Stivers") (collectively the "Landlord Defendants"). (*See id*. at ¶¶ 133-49).

Presently before the Court is Plaintiff's motion for a temporary restraining order and preliminary injunction.   (Dkt. 8).   This motion is based primarily on the alleged constitutional violations by the Town Defendants, although Plaintiff also makes a cursory argument that he is likely to prevail on what he terms his "unlawful eviction claims" against the Landlord Defendants.   (Dkt. 8-4 at 10).   Plaintiff asks the Court to "issue an Order directing the Defendants to immediately restore Plaintiff's possession of his home, and utility services, and directing the Defendants to suspend enforcement of the Defendant's Code Ordinance during the pendency of this action[.]"   (Dkt. 8-4 at 12).   For the reasons set forth below, Plaintiff's motion is denied.

## BACKGROUND

Prior to the events at issue in this lawsuit, Plaintiff resided at 15 Jackson Street, Lyons, New York (the "Property") for approximately five years with his pets.  (Dkt. 8-1 at ¶ 4).   The Property was not in good condition when Plaintiff moved in.   (*Id*. at ¶ 10). Plaintiff invested his own money for paint and repairs, and also installed a new refrigerator to replace one that had been "damaged by an infestation."   (*Id*. at ¶ 11).   Plaintiff regularly communicated via email with Mr. Cummings about the condition of the Property.   (*Id*. at ¶ 13).

Plaintiff's last written lease agreement was with WEM Property and was dated May 14, 2022.   (*Id*. at ¶ 12).   Following the end of this lease, Plaintiff remained in the Property based upon a month-to-month tenancy.   (*Id*. at ¶ 14).

At some point after May 2022, Mr. Cummings retained the Stivers as property managers.   (*Id*. at ¶ 15).   In 2023, Plaintiff requested repairs from the Stivers "including

addressing moisture damage from the chimney, leaky sinks, and rodent infestation." (*Id*. at ¶ 16). The Stivers did not make the requested repairs, nor did they otherwise maintain the premises. (*Id*. at ¶ 17). Plaintiff then ceased paying rent. (*Id*.).

On or about July 21, 2023, Mrs. Stivers sent a Notice to Terminate to Plaintiff. (*Id*. at ¶ 18). Mrs. Stivers further filed a Petition to Recover Real Property against Plaintiff. (*Id*. at ¶ 19). The Petition to Recover Real Property listed Mr. Cummings as the Petitioner/Landlord, but attached the written lease between Plaintiff and WEM Property. (*Id*.). On December 19, 2023, a state court judge issued a Warrant of Eviction for Holdover, with service stayed until February 1, 2024. (*Id*. at ¶ 21). That warrant was subsequently further stayed due to legal challenges to the eviction proceedings. (*Id*. at ¶ 22).

On January 1, 2024, Plaintiff sent an email to Mr. Cummings in which he identified the following issues with the Property: "roof . . ., black mold and plumbing . . ., exposed wiring, cracked foundation, leaking chimney, collapsing garage[.]" (Dkt. 11-4 at 3). Plaintiff stated, "[i]f code enforcement comes and gives you citations you will NOT be able to rent to someone else if you do not get the citations cleared beforehand," and advised Mr. Cummings to "look up what code enforcement can do to a property[.]" (*Id*.). Plaintiff indicated that he "wo[uld not] have code enforcement come and inspect this place" if Mr. Cummings would "stop trying to evict [him] and allow [him] to move without feeling pressured." (*Id*.).

On or about February 1, 2024, CEO Bouwens was contacted by Plaintiff, who reported that there were issues with the Property that his landlord had failed and refused to

fix and that he felt the Property was unsafe.  (Dkt. 11-7 at ¶ 5; *see* also Dkt. 8-1 at ¶ 23).

On February 1, 2024, CEO Bouwens inspected the Property.  (Dkt. 8-1 at ¶ 24; Dkt. 11-7

at ¶ 7).  CEO Bouwens "observed excrement covering the floors, and other surfaces." (Dkt.

11-7 at ¶ 10).  "The kitchen sink was leaking and did not appear to be draining.  A basin

full of gray water was located under the sink, and the cupboard and floor under the sink

were wet and covered in mold."  (*Id*. at ¶ 11).  "There was also exposed wiring in the

kitchen next to the sink." (*Id*, at ¶ 12).  "In the bathroom there was mold on the floor, water

around the base of toilet, and the toilet was not flushing."  (*Id*. at ¶ 13).  "The living room

ceiling had a large hole where the plaster had fallen due to water damage. . . .  There were

also signs of significant water damage on the walls of other rooms."  (*Id*. at ¶¶ 14, 16).

"The chimney also displayed signs of water damage, with some substance leaking from a

cap on the side of the chimney."  (*Id*. at ¶ 15).

> After completing his inspection, CEO Bouwens spoke with Plaintiff, and Plaintiff
reiterated that the Property was unsafe.  (*Id*. at ¶ 18).  CEO Bouwens told Plaintiff he agreed
and thought that the Property was unsafe and uninhabitable.  (*Id*. at ¶ 19).  CEO Bouwens
gave Plaintiff a written report indicating that he had performed a "fire safety inspection."
(Dkt. 8-1 at ¶ 24).  This report memorialized that there was exposed wiring in the kitchen,
that the bathroom and kitchen sinks were both leaking with mold present, that there was
plaster missing from the living room ceiling and waters stains on the ceiling, and that the
Property was "generally very dirty."  (*Id*.).

> CEO Bouwens concluded, based on his observations, that the condition of the
Property was a threat to Plaintiff's health and safety and was condemnable for occupancy.

(*Id*. at ¶ 20).   However, it was CEO Bouwens' understanding that Plaintiff was being evicted and would no longer be living at the Property as of the following day, February 2, 2024.  (*Id*. at ¶ 21).   For that reason, he did not believe it was necessary to condemn the Property at that time.  (*Id*.).   According to Plaintiff, CEO Bouwens did not tell him that the Property constituted an imminent risk to the safety of the occupants.  (Dkt. 8-1 at ¶ 26).

Plaintiff requested that the Stivers make the repairs noted on CEO Bouwens' written report, but they refused.  (*Id*. at ¶ 27).   Plaintiff personally "fixed the exposed wiring on the single outlet in the kitchen and deep cleaned the house."  (*Id*. at ¶ 28).   However, the bathroom and kitchen sinks still leaked and the ceiling remained water damaged.  (*Id*. at ¶ 29).

On or about March 8, 2024, CEO Bouwens received a call from either Mr. or Mrs. Stivers regarding the Property.  (Dkt. 11-7 at ¶ 25).   During this phone call, CEO Bouwens learned that Plaintiff was still living at the Property.  (*Id*. at ¶¶ 25-27).   On March 11, 2024, CEO Bouwens contacted Plaintiff on his cell phone and explained that he had been under the impression Plaintiff had been evicted from the Property as of February 2, 2024, that he had not realized Plaintiff was still living at the Property, that the condition of the Property rendered it uninhabitable, and that he was condemning the Property.  (*Id*. at ¶ 29).   CEO Bouwens told Plaintiff that he would wait to condemn the Property until March 14, 2024, to allow him time to find accommodations for himself and his pets and to remove his personal belongings.  (*Id*. at ¶ 30).   The date of the condemnation was subsequently postponed to March 15, 2024, because law enforcement was not available to accompany CEO Bouwens on March 14, 2024.  (*Id*. at ¶ 32).

Plaintiffs' attorneys were on notice of the forthcoming condemnation by March 12, 2024.  (Dkt. 8-2 at ¶¶ 9, 21; *see also* Dkt. 11-3 at 3).  Prior to the condemnation, Plaintiffs' attorneys contacted officials for the Town, expressing the opinion that there was no true emergency and that there had been "an abuse of process and or retaliation on the part of the Stivers."  (Dkt. 11-3 at 5).

On March 15, 2024, at approximately 11:00 a.m., CEO Bouwens arrived at the Property.  (*Id*. at ¶ 33).  He spoke with Plaintiff, who stated that he did not want to leave the Property and that he believed the Property was safe.  (*Id*. at ¶ 34).  Plaintiff also asked CEO Bouwens to reinspect the Property, indicating that he had fixed the exposed wiring.  (*Id*. at ¶ 35).  CEO Bouwens declined, indicating that he was not an electrician and would not be able to determine if the repair had been made properly.  (*Id*.).

Plaintiff contacted his attorneys.  (*Id*. at ¶ 36).  On March 15, 2024, at 12:27 p.m., Plaintiff's attorney sent an email to the Town's attorney, stating that Plaintiff's attorneys had "viewed the home [that] morning" and had not "observe[d] any conditions that would require an emergency condemnation."  (Dkt. 11-3 at 2).  In this email, Plaintiff's attorney requested "a prior hearing on the issue of the condemnation to comport with due process requirements."  (*Id*.).

Plaintiff ultimately complied with CEO Bouwens' directive that he leave the Property on March 15, 2024.  (Dkt. 11-7 at ¶ 36).  He removed his personal belongings and pets from Property.  (*Id*.).  CEO Bouwens placed a red placard on the window of the Property stating:

NOTICE

THIS BUILDING DOES NOT
MEET CODE REQUIREMENTS
AND ITS USE OR
OCCUPANCY HAS BEEN
PROHIBITED BY THE
TOWN OF LYONS

Dated 3/15/2024          /s/ MICHAEL BOUWENS

(Dkt. 8-1 at ¶ 36).   This notice also contained "a handwritten cite to the local code governing housing standards for rental properties."  (*Id*. at ¶ 15).

Since the condemnation on March 15, 2024, Plaintiff has been living in "a shed heated by a toaster oven." (Dkt. 8-1 at ¶ 7).  One of his pets has died.  (*Id*. at ¶ 8).  Plaintiff is currently living in the shed with two of his four dogs, his snake, his iguana, his fish, and his gecko.  (*Id*. at ¶ 45).  His other two dogs are being fostered elsewhere.  (*Id*.)  To use the bathroom, shower, do laundry, or otherwise access water, Plaintiff has to "make trips to the nearby house owned by a friend."  (*Id*. at ¶ 44).  Because Plaintiff is currently on probation, his "homelessness puts [him] at risk of incarceration if [his] address is unstable." (*Id*. at ¶ 46).

After the condemnation on March 15, 2024, Plaintiff's attorney reached out to the Town's attorney and requested "copies of any notices and documentation used to support making this alleged emergency condemnation decision by the Building Safety Inspector Marc D. Lewis or the Code Enforcement Officer Michael Bouwens."  (Dkt. 8-2 at ¶ 24). The Town's attorney advised that he would be out of town through March 25, 2024.  (*Id*.

at ¶ 25).  Plaintiff's counsel thereafter reached out to other Town officials, but did not receive a response.  (*Id*. at ¶¶ 26-28).

Plaintiff commenced this action on March 25, 2024.  (Dkt. 1).  He filed the pending motion for a temporary restraining order and a preliminary injunction on April 4, 2024. (Dkt. 8).  The Court granted Plaintiff's accompanying motion for expedited consideration (Dkt. 7), and ordered responses by April 8, 2024.  (Dkt. 10).  The Town Defendants, through counsel, and the Stivers, acting *pro se*, filed responses.  (Dkt. 11; Dkt. 13).

The Court held a hearing on April 10, 2024, at which Plaintiff and the Town Defendants appeared through counsel.  (Dkt. 22).  The Stivers appeared in person and Mr. Cummings appeared telephonically from Australia, where he resides.  (*Id*.).[1]  After hearing argument, the Court entered the following Order:

> For the reasons stated on the record at the appearance on April 10, 2024, the Court hereby orders as follows: (1) within 48 hours of entry of this Order, the Town of Lyons Code Enforcement Officer ("CEO") must be allowed into the property located at 15 Jackson Street in the Town of Lyons (the "Property") to conduct an inspection, with representative(s) of Plaintiff Joshua Krick present; (2) within 24 hours of conducting said inspection, the Town of Lyons CEO must provide written notice indicating whether the Property remains condemned and, if so, the specific basis for the condemnation with reference to any relevant violations of the Town of Lyons Code; (3) by 5:00 p.m. on Monday, April 15, 2024, the parties shall provide written status updates to the Court regarding the status of the matter.

(Dkt. 21).

---

[1]     The Court explained to Mr. Cummings at this appearance that WEM Property, an LLC, can appear in federal court only through an attorney.  *See Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) ("a sole member of a limited liability company must bear the burdens that accompany the benefits of the corporate form and may appear in federal court only through a licensed attorney").

Pursuant to the Court's Order, on April 11, 2024, CEO Bouwens reinspected the Property. (Dkt. 23-1 at 1). Mr. Stivers and Plaintiffs' attorneys were present. (*Id*.). A written report completed by CEO Bouwens indicates that he observed and photographed the following: rodent feces throughout the house; a nonfunctioning smoke detector; the kitchen outlet "improperly installed and covered in grease"; a "catch pan" under the kitchen sink with water in it; no drain connected to the bathroom sink drain; possible plugging of the bathroom drain; bare wires sticking out of the ceiling; a possible animal nest; plaster falling off the ceiling and walls; water coming through the sides of the chimney; wet plaster from roof leaks; a pile of feces and hair on the floor; a broken window; a tube that had leaked through the wall and rotted the wall board; a hole in the ceiling; a light fixture on the wall hanging by wires; and deterioration of the electric cable on the outside of the house. (*Id*.). CEO Bouwens concluded that, in his professional opinion, the Property was uninhabitable and would remain condemned "because of but not limited to": electrical safety issues; large amounts of feces in the home; plumbing drainage not functioning properly; no working smoke and carbon monoxide detectors; no running water; and roof leaks and falling plaster. (*Id*. at 1-2).

On April 17, 2024, Plaintiff file a petition for review by the Town of Lyons Zoning Board of Appeals (the "ZBA"). (Dkt. 26-4 at ¶ 16). The ZBA held a hearing on April 23, 2024. (Dkt. 26-2 at 2). On April 24, 2024, the ZBA issued a written decision in which it found that CEO Bouwens was "justified in condemning the property based on the conditions identified." (Dkt. 26-4 at ¶ 30). The ZBA expressly upheld CEO Bouwens' determination that the conditions at the Property constituted an emergency. (*Id*. at ¶ 36).

- 9 -

The ZBA stated that CEO Bouwens should have begun the condemnation on February 1, 2024, notwithstanding his belief that Plaintiff was being evicted the following day, because "beginning the condemnation on February 1, 2024 would have ensured that the property was not re-rented to someone else." (*Id*. at ¶ 33).

The ZBA concluded that the Property would "remain condemned until the Code Enforcement Officer is satisfied that the issues noted have been remedied to an extent that the property is in substantial compliance with the exterior provisions of the International Property Maintenance Code and in full compliance with the interior provisions of the International Property Maintenance Code." (*Id*. at ¶ 35 (internal quotation omitted)). The ZBA further found that CEO Bouwens was required pursuant to the Lyons Town Code to provide a timeline to the responsible party to complete the necessary repairs and instructed him to amend his report to provide for the same. (*Id*. at ¶¶ 38-39). It further indicated that if the landlord failed to comply, CEO Bouwens should consider the enforcement mechanisms set forth in the Lyons Town Code. (*Id*. at ¶ 39).[2]

On April 29, 2024, CEO Bouwens issued an amendment to his April 11, 2024 report in which he identified the necessary repairs and provided that the landlord must complete them within 14 days. (Dkt. 26-3). Plaintiff and the Town Defendants submitted supplemental briefs to the Court after issuance of the amended report. (Dkt. 26; Dkt. 27).

---

[2]    While the rest of the ZBA's decision is typewritten, this sentence of paragraph 39 is handwritten.

## DISCUSSION

### I.   Legal Standard

"In the Second Circuit, the standard for issuance of a temporary restraining order is the same as the standard for a preliminary injunction." *Antonyuk v. Hochul*, 635 F. Supp. 3d 111, 124 (N.D.N.Y. 2022); *see also Loc. 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992) ("we examine the government's application by the traditional standards which govern consideration of an application for a temporary restraining order which are the same standards as those which govern a preliminary injunction").  As the Second Circuit has explained:

> In general, district courts may grant a preliminary injunction where a plaintiff demonstrates irreparable harm and meets one of two related standards: either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.

*Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quotations omitted).  A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  The Court "has wide discretion in determining whether to grant a preliminary injunction[.]" *Id*. at 511.

### II.   Provisions of the Lyons Town Code

This action implicates several provisions of the Lyons Town Code.  The Court summarizes the relevant provisions here, for ease of reference.

- 11 -

Section 236-17 of the Lyons Town Code empowers the Code Enforcement Officer to condemn for occupancy "any building or portion thereof" that he finds "in an extreme unsanitary or unsafe condition or any condition that constitutes an immediate and serious fire hazard and thus endangers the lives of any persons, whether as owners or occupants[.]" Lyons Town Code § 236-17(B)(1).  The Code Enforcement Officer is required to issue notice that "clearly state[s] the conditions causing the unsafe conditions" and to "order the immediate vacation of the building or portions thereof."  *Id*. § 236-17(B)(2).  The condemned building is placarded, and must remain vacated until a certificate of occupancy is issued by the Code Enforcement Officer.  *Id*. § 236-17(B)(3).  The Code Enforcement Officer can issue such a certificate of occupancy only when the "dwelling or premises are in substantial compliance with the exterior provisions of the International Property Maintenance Code and in full compliance with the interior provisions of the International Property Maintenance Code."  *Id*. § 236-17(E).

Section 236-10 of the Lyons Town Code empowers the Code Enforcement Officer, where he finds that "an emergency exists which requires immediate action to protect the public health and/or safety," to "issue an order reciting the existence of such an emergency and requiring that such action be taken as he or she deems necessary to meet the emergency."  Lyons Town Code § 236-10(D)(1).  When the Code Enforcement Officer takes such emergency action, "[a]ny person to whom such order is directed shall comply therewith immediately, but upon petition to the Zoning Board of Appeals shall be afforded a hearing as soon as possible."  *Id*. § 236-10(D)(2).  An appeal to the ZBA "shall stay all proceedings in furtherance of the action appealed from unless the Code Enforcement

Officer certifies to the [ZBA] . . . that by reason of facts stated in the certificate the stay would, in his or her opinion, cause imminent peril to life or property, in which case proceedings shall not be stayed other than by a restraining order, which may be granted by the [ZBA] or by a court of competent jurisdiction." *Id*. § 300-4.7(E).

## III.  Likelihood of Success of the Merits

The Court considers first the merits of Plaintiff's claims.  Plaintiff argues that: (1) he has a likelihood of prevailing on his claim that he has been deprived of due process; (2) he has a likelihood of prevailing on his claim that his Fourth Amendment right to be free from unreasonable searches and seizures was violated; and (3) he has a likelihood of prevailing on "his New York state unlawful eviction claims against the non-municipal defendants." (Dkt. 8-4 at 6-10).  The Court considers each of these causes of action below.

### A.    Due Process Claim

"Due process requires that before state actors deprive a person of her property, they offer her a meaningful opportunity to be heard."  *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 50 (2d Cir. 2009).[3]  However, "[w]here there is an emergency requiring quick action and where meaningful pre-deprivation process would be impractical, the

---

[3]     While the Town Defendants have addressed the standards for both substantive and procedural due process claims in their opposition papers (*see* Dkt. 11-15), the Court does not read Plaintiff's complaint to assert a substantive due process claim.  Plaintiff's complaint is addressed solely to the process he did or did not receive in connection with the condemnation, and makes no mention of a denial of substantive due process.  Further, Plaintiff's briefing in support of his request for a temporary restraining order and a preliminary injunction does not argue that he is likely to succeed on a claim that he has been denied substantive due process.  The Court's discussion is accordingly addressed to the standards on a claim for a violation of procedural due process.

government is relieved of its usual obligation to provide a hearing, as long as there is an adequate procedure in place to assess the propriety of the deprivation afterwards." *Id.*; *see also Weinberger v. Town of Fallsburg*, No. 18-CV-988(NSR), 2019 WL 481733, at *6 (S.D.N.Y. Feb. 6, 2019) ("it is well-settled that no pre-deprivation process is necessary when government officials temporarily condemn property that they determine to be a danger to the public's safety, especially where adequate post-deprivation remedies are available"), *aff'd,* 801 F. App'x 37 (2d Cir. 2020), *abrogated on unrelated grounds by Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180 (2019). "[W]here there is competent evidence allowing [an] official to reasonably believe that an emergency does in fact exist, or that affording predeprivation process would be otherwise impractical, the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." *Catanzaro v. Weiden*, 188 F.3d 56, 63 (2d Cir. 1999).

In his motion papers, Plaintiff raises a number of arguments as to why he has been deprived of due process. First, Plaintiff contends that even if there was an emergency situation, CEO Bouwens was required to provide him with "contemporaneous notice of a meaningful and timely opportunity to challenge the deprivation of housing." (Dkt. 8-4 at 2). Second, Plaintiff argues that CEO Bouwens "failed to identify such imminent risk that the emergent situation would have justified a delay in a hearing until after the deprivation of housing." (*Id*. at 3). Third, Plaintiff argues that the Town and its "employees and agents willfully ignored [his] requests for a hearing and documentation supporting the determination, and continue to keep him out of his housing after being notified that the

eviction was unlawful and unconstitutional." (*Id.*).  Plaintiff further argues that "[e]ven setting aside the due process deprivation," CEO Bouwens' actions were "not supported by any state or local law." (*Id.*).

Plaintiff raises additional arguments in his supplemental brief.  Specifically, he makes a number of arguments regarding CEO Bouwens' and the ZBA's alleged failure to comply with New York state law and the Lyons Town Code. (*See* Dkt. 26 at 9-14). Plaintiff also argues that Lyons Town Code § 236-17(B)(1) is "arguably void for vagueness in its breadth[.]" (*Id.* at 9).

The Court is unpersuaded by these arguments.   As to Plaintiff's argument that he was entitled to contemporaneous notice of his right to a hearing, Plaintiff relies principally on *Breon v. Perales*, No. 6:15-CV-6335(MAT), 2015 WL 7289399 (W.D.N.Y. Nov. 16, 2015), an unreported decision issued by another judge in this District.  In *Breon*, the court denied a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), finding a plausible due process violation where a "Notice of Unsafe Structure" issued by a code enforcement officer "did not contain any pre-deprivation notice of the tenants' opportunity to challenge the decision to deprive them of their property interests[.]" *Id.* at *3.

*Breon*—which is any event not binding on this Court—is distinguishable both procedurally and factually.  The *Breon* court was deciding a motion to dismiss under Rule 12(b)(6) and not a motion for a preliminary injunction.  Accordingly, it had no cause to consider whether the plaintiff was likely to succeed on her claims, but only whether they were plausible.  Moreover, in *Breon*, there were serious questions as to whether exigent

circumstances actually existed.  *Id*. at *4.  As discussed further below, that is not the case here.  *Breon* accordingly is not persuasive under the circumstances presented in this matter.

Plaintiff also cites an Eleventh Circuit case, *Grayden v. Rhodes*, 345 F.3d 1225 (11th Cir. 2003).  (*See* Dkt. 8-4 at 7).  In *Grayden*, the Eleventh Circuit held that "[w]hen exigent circumstances prompt an emergency eviction, contemporaneous pre-deprivation notice is required but a pre-deprivation hearing is not."  345 F.3d at 1237.  The *Grayden* court concluded this meant that "tenants must receive notice of their right to challenge the condemnation decision when they are provided with the notice to vacate the building."  *Id*. at 1237-38.

However, the Second Circuit has never adopted the rule announced in *Grayden*.  To the contrary, it has held "that the federal procedural due process guarantee does *not* require state officials to inform individuals of all the procedural guarantees they enjoy under state law."  *Liberian Cmty. Ass'n v. Lamont*, 970 F.3d 174, 192 (2d Cir. 2020) (emphasis in original); *see also Porter v. Town of Fine, New York*, No. 8:18-CV-1289 MAD DJS, 2022 WL 4094516, at *9 (N.D.N.Y. Sept. 6, 2022) (granting summary judgment on procedural due process claim even though the defendant code enforcement officer "did not inform Plaintiff that she had the right to a hearing before the Town Board or that she could challenge the condemnation through an Article 78 proceeding").

Moreover, the Supreme Court has held that due process does not require "individualized notice of state-law remedies which . . . are established by published, generally available state statutes and case law."  *City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999).  In this case, Plaintiff's right to file a petition with the ZBA was set forth

in the Lyons Town Code, which is readily accessible online and linked from the Town's website.[4]  Plaintiff also could have brought a proceeding under Article 78 of the New York Civil Practice Rules and Law ("Article 78"), another published, generally available state statute.  Under *City of West Covina*, there is no basis for the Court to conclude that due process required the Town Defendants to individually inform Plaintiff of his right to appeal CEO Bouwens' determination to the ZBA or of his ability to pursue an Article 78 proceeding.  Accordingly, Plaintiff has not shown that he is likely to succeed on his due process claim on this basis, or that there are serious questions as to the merits of this contention.

Nor is Plaintiff entitled to injunctive relief based on his argument that no exigent circumstances existed.  The record before the Court amply demonstrates that CEO Bouwens had a reasonable basis to conclude that emergency condemnation of the Property was warranted.  *See WWBITV*, 589 F.3d at 51 ("where an adequate post-deprivation process exists, an official reasonably believing on the basis of competent evidence that there is an emergency does not effect a constitutional violation by" taking action "without notice or a hearing").  Plaintiff himself was plainly of the opinion that the Property was in a serious state of disrepair.  In his email to Mr. Cummings dated January 1, 2024, he stated that the Property "wouldn't pass inspection" because it had a leaking roof and chimney, black

---

[4]      This is another way in which this case is distinguishable from *Breon*—there, the code sections at issue did "not mention anything about the availability of a hearing or other opportunity to be heard in the event that a structure [was] 'condemned' as unsafe."  2015 WL 7289399, at *3.

mold, faulty plumbing, exposed wiring, a cracked foundation, and a collapsing garage. (Dkt. 11-4 at 2-3). Plaintiff then contacted CEO Bouwens on February 1, 2024, and reported that he felt the property was unsafe. (Dkt. 11-7 at ¶ 6).

While inspecting the Property at Plaintiff's invitation, CEO Bouwens observed: excrement covering the floors and other surfaces; faulty plumbing and standing grey water; mold in multiple areas; exposed wiring; and significant water damage, including a large hole in the living room ceiling where the plaster had fallen and a substance leaking from the chimney. (Dkt. 11-7 at ¶¶ 10-15). CEO Bouwens' written report from February of 2024 memorializes the presence of exposed wiring, mold, faulty plumbing, water damage to the ceilings, and "very dirty" conditions. (Dkt. 11-14 at 2). Exposed wiring, collapsing ceilings from water damage, pervasive mold, excrement covered floors and surfaces, and a lack of functioning plumbing (causing additional water damage and standing grey water) could all have reasonably been determined by CEO Bouwens to qualify as "extreme unsanitary or unsafe condition[s]," Lyons Town Code § 236-17(B)(1), and to constitute an immediate danger to occupants of or visitors to the Property, *see Weinberger*, 2019 WL 481733, at *7 ("Defendants found numerous safety concerns that warranted the immediate condemnation of Plaintiff's property. For example, the lack of working smoke detectors and exposed wires and broken outlets and circuit breakers alone presented serious safety concerns—let alone in conjunction with the other dilapidations identified.").

Plaintiff argues that CEO Bouwens' failure to condemn the Property on February 1, 2024, is evidence that there was no genuine emergency. (*See* Dkt. 8-4 at 8). It is true that a delay can sometimes undercut an official's claim of an emergency. *See WWBITV*, 589

F.3d at 51 ("the existence of a three-month delay between when the city declared an emergency and when it demolished [a] building gave rise to a genuine issue as to whether the defendants acted arbitrarily in proclaiming a need to protect the public by condemning the structure without providing its owner a pre-deprivation" (citing *Burtnieks v. City of New York,* 716 F.2d 982 (2d Cir. 1983))).  However, Plaintiff has not contradicted CEO Bouwens' representation that he believed the Property would be vacant as of February 2, 2024.  CEO Bouwens also took action promptly upon learning that Plaintiff in fact was still living at the Property.  Accordingly, the delay in this case is not unexplained, and does not support the conclusion that CEO Bouwens acted arbitrarily.

While there is certainly an argument that CEO Bouwens should have begun the emergency condemnation proceedings on February 1, 2024—indeed, the ZBA concluded that he should have done just that—the Court does not find that such an error renders the invocation of emergency procedures in March of 2024 a due process violation.  The Second Circuit has cautioned against "subjecting a decision to invoke an emergency procedure to an exacting hindsight analysis, where every mistake, even if made in good faith, becomes a constitutional violation," noting that such a procedure "encourage[s] delay and thereby potentially increase[s] the public's exposure to dangerous conditions."  *Catanzaro,* 188 F.3d at 63.

Plaintiff also argues that there was no emergency because "[n]o corrective orders or violations were issued" on February 1, 2024, March 15, 2024, or April 11, 2024.  (Dkt. 26 at 10).  However, in the same paragraph of the same filing, Plaintiff acknowledges that "the Town of Lyons did not have current contact information for the property owner WEM

Property LLC or its principal Wayne Cummings necessary to issue corrective orders or violations." (*Id.*).  It is unclear to the Court how the failure to issue corrective orders or violations demonstrates the absence of an emergency where CEO Bouwens concededly knew that he lacked the information necessary to serve such corrective orders or violations on the parties who would have been responsible for complying with them.  On the record before the Court, Plaintiff is not likely to succeed on a claim that CEO Bouwens acted arbitrarily in determining that emergency conditions existed, nor has he shown serious questions going to the merits of this issue.

The Court turns next to Plaintiff's argument that the Town and its agents ignored his requests for a hearing.  The record before the Court shows only one request for a hearing that appears to have been ignored—the request for a "prior" hearing sent by Plaintiff's counsel after the condemnation had already been commenced on March 15, 2024.  Plaintiff has provided no authority for the proposition that the Town was required to respond to an email to its attorney asking for a "prior" hearing at a time when emergency procedures had been invoked and the condemnation was underway.  There is also no evidence in the record that the Town Defendants ignored a request for review of CEO Bouwens' actions once it was made to the proper body—that is, as a petition filed with the ZBA.  When Plaintiff filed such a petition, he was given a hearing six days later, and a written decision was issued the following day.

Plaintiff argues that he could not bring a petition before the ZBA because he "lacked, and still lacks, details about the alleged basis of the Code Enforcement officer's actions to contest the condemnation before the Zoning Board of Appeals." (Dkt. 26 at 12).

This argument lacks merit.  On February 1, 2024, CEO Bouwens issued to Plaintiff a written report documenting the unsafe and unsanitary conditions he had observed at the Property.  CEO Bouwens issued an additional, more detailed written report on April 11, 2024, again setting forth the basis for his conclusion that the Property was condemnable. While Plaintiff has raised a number of arguments regarding whether these written reports complied with the Lyons Town Code, that does not change the fact that he knew what action CEO Bouwens was taking and he knew why CEO Bouwens was taking it.  Plaintiff has offered nothing but speculation that, because of the alleged deficiencies in the written reports, "it is certainly possible that the Town ZBA would have denied his hearing request on the basis that his hearing rights had not been triggered."  (Dkt. 26 at 14).  This is demonstrably not the case with respect to the April 11, 2024 report, because the ZBA afforded him a hearing when he filed a petition.  Moreover, Lyons Town Code § 236-10(D) expressly provides that any person to whom the Code Enforcement Officer directs an emergency order may petition the ZBA for hearing.

Plaintiff's disagreement with ZBA's conclusions and recitations of the facts also does not support his due process claim.  "Procedural due process does not permit a court to review the substance of" a state official's decision—"[t]he Due Process Clause permits only an evaluation of whether Defendants' method for coming to their . . . determinations is sufficient."  *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017); *see also Martin v. Town of Westport*, 329 F. Supp. 2d 318, 335 (D. Conn. 2004) ("disagreement with the substance of the . . . decision does not in any way support a claim for denial of procedural due process").

- 21 -

Plaintiff has also raised a number of arguments regarding the Town Defendants' compliance with New York law and the Lyons Town Code.  However, "violations of state law procedural requirements do not alone constitute deprivation of due process since 'federal constitutional standards rather than state law define the requirements of procedural due process.'"  *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) (quoting *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990)).  The Court does not find that any alleged violation of New York law or the Lyons Town Code by the Town Defendants raises serious questions about the merits of Plaintiff's due process claim.

Finally, the Court is unpersuaded by the argument that Lyons Town Code § 236-17(B)(1) is void for vagueness.  Under the void-for-vagueness doctrine—"one of the most fundamental protections of the Due Process Clause"—"laws [must] be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them."  *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186 (2d Cir. 2010) (citation omitted).  "A law or regulation may be challenged as void-for-vagueness either on its face or as applied."  *Union Square Supply Inc. v. De Blasio*, 572 F. Supp. 3d 15, 21 (S.D.N.Y. 2021).  Where—as here—the law at issue does not implicate First Amendment rights, a court will generally decide a vagueness challenge "in light of the specific facts of the case at hand and not with regard to the facial validity of the . . . statute or regulation at issue."  *United States v. Holcombe*, 883 F.3d 12, 17 (2d Cir. 2018) (citation omitted).

"Limitations inherent in the English language often prevent the drafting of statutes both general enough to take into account a variety of human conduct and sufficiently

specific to provide fair warning that certain kinds of conduct are prohibited." *Williams v. Korines*, 966 F.3d 133, 140 (2d Cir. 2020) (quotation omitted).  As such, "a statute or regulation is not required to specify every prohibited act." *Id*. (citation omitted).

Plaintiff argues that Lyons Town Code § 236-17(B)(1) is unconstitutionally vague because "[t]here is no guidance or definition regarding an extreme unsanitary condition in the Lyons Town Code." (Dkt. 26 at 9).  However, a person of ordinary intelligence would understand an apartment covered in excrement and mold, infested by rodents, and lacking working plumbing to fall within the plain meaning of an "extreme unsanitary condition." "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974).

In sum, Plaintiff has not demonstrated that he is likely to succeed on the merits of his due process claim, nor has he satisfied the lesser standard of demonstrating sufficiently serious questions as to the merits.   The record before the Court shows that CEO Bouwens reasonably concluded, based on competent evidence, that there was a basis to condemn the Property on an emergency basis.  Under these circumstances, Plaintiff was not entitled to a pre-deprivation hearing.[5]  He also was not entitled to be individually informed of his

---

[5]      Even assuming for the sake of argument that Plaintiff was entitled to a pre-deprivation hearing, the Court still would not find it appropriate to issue a preliminary injunction ordering the Town Defendants to allow him to live in the Property, which the record plainly demonstrates is unsafe and extremely unsanitary.  The only plausible factual difference a pre-deprivation hearing could have made in this case would have been to expedite the decision that Plaintiff has now received from the ZBA following the post-deprivation hearing.  Plaintiff has cited no cases in which a court has granted a preliminary injunction of the type he has requested on comparable facts, nor has the Court discovered any such cases in its own research.

rights to a post-deprivation hearing under published, generally available state and local laws.  Adequate post-deprivation hearings were available to Plaintiff.  This is all that federal due process generally requires.

### B.      Fourth Amendment Claim

For substantially similar reasons, Plaintiff cannot meet the relevant standard with respect to his Fourth Amendment claim.  "[R]easonableness is . . . the ultimate standard under the Fourth Amendment."  *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 71 (1992) (quotation omitted).  Plaintiff argues that the Town Defendants' actions were "inherently unreasonable" because he was provided "[n]o documentation or hearings pre or post-deprivation to substantiate the municipality's decision to condemn the [Property]."  (Dkt. 8-4 at 10).  As discussed at length above, this is not an accurate representation of what occurred in this case.  Plaintiff has proffered no other argument as to why his Fourth Amendment rights have been violated, and thus is not entitled to injunctive relief on this basis.[6]

### C.      State Law Claims

Finally, Plaintiff lumps together his claims against the Landlord Defendants, refers to them as "unlawful eviction claims," and asserts in a conclusory manner that he is likely

---

[6]      Town Defendants argue that Plaintiff's Fourth Amendment claim fails because, "[p]ursuant to *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172 (1985), where a State provides a 'reasonable, certain and adequate provision' allowing just compensation for the taking, no Federal claim lies."  (Dkt. 11-15).  This argument fails because *Williamson* was overruled by the Supreme Court five years ago, in *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180 (2019).  However, this does not change the Court's conclusions regarding Plaintiff's failure to meet his burden on a motion for injunctive relief.

to succeed thereon.  (Dkt. 8-4 at 10).  The thrust of Plaintiff's argument seems to be that the Landlord Defendants circumvented New York Real Property Law §§ 768 and 853 by "using unlawful code enforcement as an end-run around the state eviction process[.]"  (*Id.*).

This argument is wholly unpersuasive.  Perhaps most importantly, the record before the Court indisputably establishes that it was Plaintiff himself, and not any of the Landlord Defendants, who contacted CEO Bouwens and alerted him to the Property's severe state of disrepair.  Further, while it was either Mr. or Mrs. Stivers who alerted CEO Bouwens that Plaintiff was still living in the Property in March of 2024, there is no evidence before the Court to suggest that CEO Bouwens was acting at the behest of any of the Landlord Defendants in making his determinations regarding the need for emergency condemnation.

Moreover, Plaintiff has failed to identify the legal elements of his so-called "unlawful eviction claims," or to explain how they are purportedly satisfied in this case. Plaintiff's complaint asserts three claims against the Landlord Defendants: (1) breach of the warranty of habitability; (2) negligence; and (3) abuse of process.  (Dkt. 1 at ¶¶ 133-49).  These are distinct claims under New York law with specific legal requirements. Plaintiff has not demonstrated that the standard for issuance of injunctive relief has been satisfied as to any of them.

## IV. **Remaining Factors**

Because Plaintiff has not demonstrated a likelihood of success on the merits or serious questions going to the merits, the Court need "not address the remaining factors relevant to issuance of injunctive relief, including whether [Plaintiff] has established that he would suffer irreparable harm in the absence of injunctive relief or whether the balance

of the equities weighs in favor of such relief." *Roberts v. Puma N. Am., Inc.*, No. 21-CV-2559 (JSR), 2021 WL 2168969, at *2 n.2 (S.D.N.Y. May 27, 2021).  The Court does note that Plaintiff's primary argument with respect to the balance of the equities is that the Town Defendants "have no equitable interest in continuing to exclude Plaintiff . . . from his home without a hearing[.]"  (Dkt. 8-4 at 11).  However, Plaintiff has now had a hearing before the ZBA.

Further, the Town clearly has an equitable interest in the safety of its citizens, which Plaintiff has not addressed in any meaningful way in his papers.   Plaintiff also has not addressed the fact that he was the one who called CEO Bouwens to report that the Property was in an unsafe condition, nor the fact that he threatened to use code enforcement as leverage to stop his landlord from seeking to evict him.  It is therefore not by any means clear that the balance of the equities in this case favors the Plaintiff.

## V.   <u>Town Defendants' Request to Sever</u>

Town Defendants have included in their opposition papers a request that the Court sever and refuse jurisdiction over Plaintiff's state law claims against the Landlord Defendants.  Pursuant to Federal Rule of Civil Procedure 21, this Court may "sever any claim against a party."  "The moving party bears the burden of demonstrating that severance is required to avoid prejudice or confusion and to promote the ends of justice." *N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 114 (S.D.N.Y. 2015) (quotation omitted).

The Court does not disagree that severance might be warranted in this case. However, Town Defendants have not meaningfully briefed the matter, nor did Plaintiff or

the Landlord Defendants respond to the request.  The Court accordingly denies Town Defendants' request to sever without prejudice to filing a separate motion for such relief, which the Court will decide after appropriate briefing.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for a temporary restraining order and preliminary injunction (Dkt. 8) is denied.  Town Defendants' request to sever Plaintiff's state law claims is denied without prejudice.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        May 17, 2024
              Rochester, New York